‖FREDERICK DEMI, *against* CHRISTIAN BOSSLER.

IN ERROR.

Where a lease is made for the term of a year, and the tenant sows the land with spring grain, before his term expires, he has no right to the crop of spring grain, cut after the term is out; and this whether the lease be for a money rent, or *on the shares*.

The custom in Pennsylvania, as to the way going crop, is confined to fall grain, sowed in the autumn, before the expiration of the lease, and cut in the summer after it determines.

In error to the District Court for the city and county of Lancaster.

This was an action of trover and conversion, by which the plaintiff sought to obtain the value of oats, in the straw, which grew on twenty-four acres of land, alleged to be one thousand six hundred dozen of sheaves, of the value of three hundred dollars, and which came into the defendant's possession on the the 15th of July, 1825.

On the 1st December, 1823, *Christian Bossler*, leased the land on which these oats grew to *Frederick Demi*, the plaintiff, for the term of one year, from the 1st day of April, 1824, to the 1st day of April, 1825. The lease contained a covenant that "*Demi*" should "cultivate; the said plantation by the shares" that each of the said parties "should have the one equal half part of all the wheat, rye, oats, indian corn, hay and pasture": the wheat, rye and oats, to be delivered in the bushel. The landlord, on the 28th December, 1824, served *Demi*, with notice to leave the premises, and by a proceeding under the landlord and tenant act, commencing on the 4th of April, 1825, compelled him to quit. The oats in question, were sown in the month of March before the expiration of the lease. The charge of the court, being with the defendant, a verdict was found for him: and the plaintiff brought this writ of error, and assigned for error, this opinion of the court.

*Porter*, for the plaintiff in error. The question is, whether a tenant who has put out a spring crop, in proper season, before the expiration of his lease, has a right to enter, after his term is ended, and cut that crop. By the terms of the lease, the tenant was to cultivate the land "by the shares," and divide the "oats," as well as other grain, in the bushel. The lease too, is without any restriction as to the mode of cultivation, and contains no covenant, that he should quit at the end of the term. The right claimed, is then consistent with the covenants in the lease, giving to the tenant a compensation for his labor, and the landlord the benefit of the covenant, to deliver the one half of the grain cut. The case of *Stultz* v. *Dickey*, 5 *Bin.* 285, establishing the right of the tenant to the way going crop, was a case in which fall grain was claimed;

(Frederick Demi *v.* Christian Bossler.)

but the reasoning in that case is applicable to the present: that too, was the case of a money rent, this a rent by the shares. He referred also to *Carson* v. *Blazer*, 2 *Bin.* 475, 487. *Biggs* v. *Brown*, 2 *Serg. & Rawle*, 14.

*Henry*, contra. The tenant knew that his term was to expire on the 1st day of April, 1825, and had full notice to quit, before he sowed the grain in question, and he sowed it a few days before the end of his term.

This takes from his case all equity. The way going crop, the right to which exists in Pennsylvania, means the fall crop. This right, has its foundation in particular custom, and did not exist at common law. *Gordon* v. *Little*, 8 *Serg. & Rawle*, 533, 559. The particular custom is supposed to enter into the contract between the parties, and if the plaintiff wished to extend it to the spring crop, it was incumbent on him to prove a custom, to sustain him: A custom in derogation of the common law, must be construed strictly, and will not be extended without evidence. 1 *Blac. Com.* 78.

*Norris*, on the same side. Before the case of *Stultz* v. *Dickey*, 5 *Bin.* 285, decided at Lancaster; the custom, as to the way going crop, was not established in Pennsylvania, and is inconsistent with the language of the lease; which by its terms is to expire at the end of the year. But this custom, does not extend to give the tenant two spring crops, and one fall crop. The plaintiff was permitted to give evidence to establish such a custom, but in this he failed. Here the lease, by its terms, ends with the year, and cannot be carried beyond it, but by usage, and this is a matter *in pais*, and lies in proof. But the right contended for, is in the highest degree unreasonable; it would permit the tenant by sowing a spring crop, under a lease for one year, to occupy the premises rented for two years: and would be against the course of good husbandry, as it is in violation of the contract of the parties.

*Hopkins*, in reply. We do not rely on usage, we stand on our contract, and the law of the land. By the terms of the lease, the tenant had the exclusive right to the land for one year, with no other restriction, but that he should not under-let; he was to have the half of what was sown during the term, and the landlord the other half. There is no restriction in the lease as to the time he should sow. If to sow grain in the spring, as was done in this case, be contrary to good husbandry, the landlord should have guarded against it, by an appropriate covenant. As there is no such restriction, it is the defendant who must resort to the proof of usage, to effect a construction of the lease, which its language does not import, and that too, for the unjust purpose of depriving the tenant of a compensation for his labor.

The opinion of the court was delivered by

HUSTON, J. By the common law, a tenant after the expiration of

(Frederick Demi *v.* Christian Bossler.)

his lease, and removal from the tenement, had no right to return; and hence the crops growing and ungathered, were lost to him. The law in this State has varied from that, as to what has been called the way going crop, which, heretofore, has been confined to grain sown in the autumn, to be reaped the next harvest: and no difference has yet been established between a tenant, who pays a rent in money, and one who gives, as rent to his landlord, a share of the produce of the farm. The usage and general understanding of the country form a part of general agreements, unless otherwise specified. 5 *Bin.* 285, *Stultz* v. *Dickey.* If a tenant rents a farm for one year, it is understood, he is to take one crop of each kind of grain cultivated, and that he is to mow as many crops of grass as the meadows will produce. If a tenant on a monied rent, can sow with oats, flax or other grain in March, before his lease expires, which is always about the first of April; he in fact gets the benefit of the farm for two years, although he pays the rent of but one. So, if he takes the farm on the shares, and after raising the summer crop one year, sows in March all the grounds with oats, no tenant can go on it the next year, or he will have no land to cultivate for spring crops, and can put in fall crops, but on oats stubble, which yields badly. The law has been well and justly settled, and favorably to tenants. The present attempt is unreasonable, and pregnant with injustice to one party, and would eventuate in injury to tenants as a class; for the tenant who rents a farm for the ensuing year, will not know, whether he can put in a spring crop until he knows whether the month of March will be clement or inclement, or whether the previous tenant was regardful of the rights and interests of others, and the general laws and usages of the country. The conduct of *Demi*, in this particular case, was unreasonable and unjust, and to sanction it would only introduce a new clause into leases. It is contrary to the common law, to the law as settled in this State, and is not pretended to be sanctioned by any usage.

Judgment affirmed.